## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| STEPHANIE KIBBLE, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    v.<br><br>INDEPENDENT BANK,<br><br>                    Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff Stephanie Kibble ("Plaintiff"), on behalf of herself and all persons similarly situated, alleges the following based on personal knowledge as to the allegations regarding herself and on information and belief as to other allegations.

## INTRODUCTION

1.      This is a civil action seeking monetary damages, restitution and declaratory relief from Defendant, Independent Bank ("Independent"), arising from (1) the unfair and unconscionable assessment and collection of "overdraft fees" ("OD Fees") on accounts that were never actually overdrawn; and (2) for routinely charging more than one OD Fee or non-sufficient funds fees ("NSF Fee") on a single transaction.

2.      These practices breach contractual promises made in Independent's adhesion contracts and constitute deceptive practices.

3.      In plain, clear, and simple language, the checking account contract documents discussing OD Fees promise that Independent will <u>only</u> charge OD Fees or NSF Fees on transactions where there are insufficient funds to cover them and will only charge one such fee on a given item.

4.     Independent also breaches its duty of good faith and fair dealing when it charges fee in the above circumstances.

5.     Independent's customers have been injured by Independent's improper practices to the tune of millions of dollars billed from their accounts in violation of their agreements with Independent.

6.     On behalf of herself and the Classes, Plaintiff seeks damages, restitution, and injunctive relief for Defendant's violations as set forth more fully below.

## JURISDICTION

7.     This Court has original jurisdiction over this putative class action lawsuit pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) & (6), because the aggregate sum of the claims of the members of each of the putative class exceeds $5 million, exclusive of interest and costs, because Plaintiff bring this action on behalf of proposed class that are each comprised of over one hundred members, and because at least one of the members of each of the proposed class is a citizen of a different state than Defendant.

8.     Venue is appropriate under 28 U.S.C. § 1391(b) because Defendant resides in this District and is the only Defendant in this action.

## PARTIES

9.     Plaintiff Stephanie Kibble is a citizen and resident of Charlotte, Michigan.

10.     Defendant Independent Bank has nearly $4 billion in assets and maintains its headquarters in Grand Rapids, Michigan.

## I.    INDEPENDENT CHARGES OD FEES ON TRANSACTIONS THAT DO NOT ACTUALLY OVERDRAW THE ACCOUNT

### A.    Overview of Claim

11.     Independent issues debit cards to its checking account customers, including Plaintiff, which allows its customers to have electronic access to their checking accounts for

purchases, payments, withdrawals and other electronic debit transactions.

12.    Pursuant to its Account Documents, Independent charges fees for debit card transactions that purportedly result in an overdraft.

13.    Plaintiff brings this cause of action challenging Independent's practice of charging OD Fees on what are referred to in this complaint as "Authorize Positive, Purportedly Settle Negative Transactions" ("APPSN Transactions").

14.    Here's how it works. At the moment debit card transactions are authorized on an account with positive funds to cover the transaction, Independent immediately reduces accountholders checking accounts for the amount of the purchase, sets aside funds in a checking account to cover that transaction, and as a result, the accountholder's displayed "available balance" reflects that subtracted amount. As a result, customers' accounts will always have sufficient available funds to cover these transactions because Independent has already sequestered these funds for payment.

15.    However, Independent still assesses crippling OD Fees on many of these transactions and mispresents its practices in its Account Documents.

16.    Despite putting aside sufficient available funds for debit card transactions at the time those transactions are authorized, Independent later assesses OD Fees on those same transactions when they purportedly settle days later into a negative balance.  These types of transactions are APPSN Transactions.

17.    Independent maintains a running account balance in real time, tracking funds accountholders have for immediate use. This running account balance is adjusted, in real-time, to account for debit card transactions at the precise instance they are made. When a customer makes a purchase with a debit card, Independent sequesters the funds needed to pay the transaction, subtracting the dollar amount of the transaction from the customer's available balance. Such funds

are not available for any other use by the accountholder, and such funds are specifically associated with a given debit card transaction.

18.     Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 34, 2009).

19.     That means when any *subsequent*, intervening transactions are initiated on a checking account, they are compared against an account balance that has already been reduced to account for any earlier debit card transactions. This means that many subsequent transactions incur OD Fees due to the unavailability of the funds sequestered for those debit card transactions.

20.     Still, despite keeping those held funds off-limits for other transactions, Independent improperly charges OD Fees on those APPSN Transactions, although the APPSN Transactions *always* have sufficient available funds to be covered.

21.     Indeed, the Consumer Financial Protection Bureau ("CFPB") has expressed concern with this very issue, flatly calling the practice "unfair" and/or "deceptive" when:

> A financial institution authorized an electronic transaction, which reduced a customer's available balance but did not result in an overdraft at the time of authorization; settlement of a subsequent unrelated transaction that further lowered the customer's available balance and pushed the account into overdraft status; and when the original electronic transaction was later presented for settlement, because of the intervening transaction and overdraft fee, the electronic transaction also posted as an overdraft and an additional overdraft fee was charged. Because such fees

4

caused harm to consumers, one or more supervised entities were found to have acted unfairly when they charged fees in the manner described above. Consumers likely had no reason to anticipate this practice, which was not appropriately disclosed. They therefore could not reasonably avoid incurring the overdraft fees charged. Consistent with the deception findings summarized above, examiners found that the failure to properly disclose the practice of charging overdraft fees in these circumstances was deceptive. At one or more institutions, examiners found deceptive practices relating to the disclosure of overdraft processing logic for electronic transactions. Examiners noted that these disclosures created a misimpression that the institutions would not charge an overdraft fee with respect to an electronic transaction if the authorization of the transaction did not push the customer's available balance into overdraft status. But the institutions assessed overdraft fees for electronic transactions in a manner inconsistent with the overall net impression created by the disclosures. Examiners therefore concluded that the disclosures were misleading or likely to mislead, and because such misimpressions could be material to a reasonable consumer's decision-making and actions, examiners found the practice to be deceptive. Furthermore, because consumers were substantially injured or likely to be so injured by overdraft fees assessed contrary to the overall net impression created by the disclosures (in a manner not outweighed by countervailing benefits to consumers or competition), and because consumers could not reasonably avoid the fees (given the misimpressions created by the disclosures), the practice of assessing fees under these circumstances was found to be unfair.

Consumer Financial Protection Bureau, Winter 2015 "Supervisory Highlights."

22.    The CFPB recently release additional critique of this exact practice:

Unanticipated overdraft fees can occur on "authorize positive, settle negative" or APSN transactions, when financial institutions assess an overdraft fee for a debit card transaction where the consumer had sufficient available balance in their account to cover the transaction at the time the consumer initiated the transaction and the financial institution authorized it, but due to intervening authorizations, settlement of other transactions (including the ordering in which transactions are settled), or other complex processes, the financial institution determined that the consumer's balance was insufficient at the time of settlement. These unanticipated overdraft fees are assessed on consumers who are opted in to overdraft coverage for one-time debit card and ATM transactions, but they likely did not expect overdraft fees for these transactions.
 …

Certain financial institution practices can exacerbate the injury from unanticipated overdraft fees from APSN transactions by assessing overdraft fees in excess of the number of transactions for which the account lacked sufficient funds. In these APSN situations, financial institutions assess overdraft fees at the time of settlement based on the consumer's available balance reduced by debit holds, rather than the consumer's ledger balance, leading to consumers being assessed multiple overdraft fees when they may reasonably have expected only one.

Consumer    Financial    Protection    Bureau,    Circular    2022-06,    October    26,    2022,
https://files.consumerfinance.gov/f/documents/cfpb_unanticipated-overdraft-fee-assessment-
practices_circular_2022-10.pdf, pp. 8-9, 10 (last accessed November 2, 2022).

23.    There is no justification for these practices, other than to maximize Independent's
OD Fee revenue. APPSN Transactions only exist because intervening checking account
transactions supposedly reduce an account balance. But Independent is free to protect its interests
and either reject those intervening transactions or charge OD Fees on those intervening
transactions—and it does the latter to the tune of millions of dollars each year. But Independent
was not content with these millions in OD Fees. Instead, it sought millions *more* in OD Fees on
these APPSN Transactions.

24.    Besides being unfair and unjust, these practices breach contract promises made in
Independent's adhesion contracts—contracts which fail to inform accountholders about, and in fact,
misrepresent, the true nature of Independent's processes and practices. These practices also exploit
contractual discretion to gouge accountholders.

25.    In plain, clear, and simple language, the checking account contract documents
covering OD Fees promise that Independent will only charge OD Fees on transactions that have
insufficient funds to "cover" that debit card transaction.

26.    In short, Independent is not authorized by contract to charge OD Fees on
transactions that have not overdrawn an account, but it has done so and continues to do so.

**B.    Mechanics of a Debit Card Transaction**

27.    A debit card transaction occurs in two parts. First, authorization for the purchase
amount is instantaneously obtained by the merchant from Independent. When a merchant
physically or virtually "swipes" a customer's debit card, the credit card terminal connects, via an
intermediary, to Independent, which verifies that the customer's account is valid and that sufficient available

funds exist to "cover" the transaction amount.

28.    At this step, if the transaction is approved, Independent immediately decrements the funds in an accountholder's account and sequesters funds in the amount of the transaction but does not yet transfer the funds to the merchant.

29.    Indeed, the entire purpose of the immediate debit and hold of positive funds is to ensure that there are enough funds in the account to pay the transaction when it settles, as discussed in the Federal Register notice announcing revisions to certain provisions of the Truth in Lending Act regulations:

> When a consumer uses a debit card to make a purchase, a hold may be placed on funds in the consumer's account to ensure that the consumer has sufficient funds in the account when the transaction is presented for settlement. This is commonly referred to as a "debit hold." During the time the debit hold remains in place, which may be up to three days after authorization, those funds may be unavailable for the consumer's use for other transactions.

Federal Reserve Board, Office of Thrift Supervision, and National Credit Union Administration, Unfair or Deceptive Acts or Practices, 74 FR 5498-01 (Jan. 34, 2009).

30.    Sometime thereafter, the funds are actually transferred from the customer's account to the merchant's account.

31.    Independent (like all credit unions and banks) decides whether to "pay" debit card transactions at authorization. After that, Independent is obligated to pay the transaction no matter what. For debit card transactions, that moment of decision can only occur at the point of sale, at the instant the transaction is authorized or declined. It is at that point—and only that point—when Independent may choose to either pay the transaction or decline it. When the time comes to actually settle the transaction, it is too late—the financial institution has no discretion and must pay the charge. This "must pay" rule applies industry wide and requires that, once a financial institution authorizes a debit card transaction, it "must pay" it when the merchant later makes a demand, regardless of other account activity. *See* Electronic Fund Transfers, 74 Fed. Reg. 59033-01, 59046

(Nov. 17, 2009).

32.      There is no change—no impact whatsoever—to the available funds in an account when this step occurs.

### C.      Independent's Account Contract

33.      Plaintiff has an Independent checking account, which is governed by Independent's Account Documents.

34.      Amongst the Account Documents which governs Plaintiff's relationship with Independent is a document entitled, "Account Agreement," attached hereto as Exhibit A.

35.      The Account Agreement states in pertinent part that Independent will immediately deduct available funds for "pending" debit card transactions, and that for purposes of determining overdrafts "authorization" and "payment" are coterminous:

> If your account lacks sufficient funds to pay a check, preauthorized transfer, or other debit activity presented for payment as determined by the available balance or actual balance in your account, we may (1) return the item, or (2) pay the item at our discretion.
>
> **Available Balance**. The available balance is the amount of funds that you have in your account to spend without incurring an overdraft fee. The available balance reflects pending debits and transactions and checks that not yet cleared your account. For example, you have $100 in your account and spend $25 on groceries. The $25 may show as a pending transaction, and your available balance is $75. If you spend more than the available balance, then you may incur an overdraft fee.
>
> **Actual Balance**. The actual balance is the total amount of funds in your account and does not reflect any pending credits or debits, transactions, or checks that have not cleared your account. For example, you have $100 in your account spend $25 on groceries. The $25 may show as a pending transaction, but the $100 is your actual account balance and the amount you can spend before you incur and overdraft fee.
>
> If we return the item without paying it, we may charge you a non-sufficient funds fee. If we do pay the item on your behalf, you will be responsible to pay the overdrawn balance and an overdraft fee.
>
> […]
>
> As part of our offered standard overdraft practice we do not authorize and pay overdrafts on ATM or everyday debit card transactions unless you request us to do

so.

Account Agreement at 2.

36.     Further, the Overdraft Opt-in Form, attached hereto as Exhibit B, misrepresents to customers that OD Fees will only be charged when there is not enough money in the account to "cover" a transaction, while also reiterating that for debit card transactions, "authorization" and "payment" are coterminous:

> An overdraft occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway.
>
> We can cover your overdrafts in two different ways:
>
> We have standard overdraft practices that come with your account.
>
> We also offer overdraft protection plans, such as a link to a savings account, which may be less expensive than our standard overdraft practices. To learn more, ask us about these plans. This notice explains our standard overdraft practices.
>
> What are the standard overdraft practices that come with my account? We do authorize and pay overdrafts for the following types of transactions:
>
> - Checks and other transactions made using your checking account number
> - Automatic bill payments We do not authorize and pay overdrafts for the following types of transactions unless you ask us to (see below):
>   - ATM transactions
>   - One-time debit card transactions
>
> We pay overdrafts at our discretion, which means we do not guarantee that we will always authorize and pay any type of transaction. If we do not authorize and pay an overdraft, your transaction will be declined.

37.     According to the Electronic Funds Transfer Disclosure, Ex. C, Independent reduces an account balance at the time of a point of sale debit card transaction, and will refuse or return any subsequent transactions that threaten to consume funds needed to "pay for" such debit card transactions:

> POINT OF SALE TRANSACTIONS. [] Purchases made with your [debit] card, including any purchase where you receive cash, are referred to as "Point of Sale" transactions and will cause your "designated account" to be debited for the amount of the purchase.  We have the right to return any check or other item drawn against

9

your account to ensure there are funds available to pay for any Point of Sale transaction. We may, but do not have to, allow transactions which exceed your available account balance or, if applicable, your available overdraft protection. If we do, you agree to pay the overdraft.

38.    For debit card transactions, the bank decides whether to "authorize and pay" a transaction at the moment the request is made, thus immediately reducing the available balance.

39.    For APPSN Transactions, which are immediately deducted from a positive account balance and held aside for payment of that same transaction, there are always funds to cover those transactions—yet Independent assesses OD Fees on them anyway.

40.    The above promise means that transactions are only overdraft transactions when they are authorized into a negative account balance. Of course, that is not true for APPSN Transactions.

41.    APPSN transactions are always *initiated* at the time the customer swipes the debit card when there are sufficient available funds in the account.

42.    In fact, Independent actually authorizes transactions on positive funds, sets those funds aside on hold, then fails to use those same funds to settle those same transactions. Instead, it uses a secret posting process described below.

43.    All the above representations and contractual promises are untrue. In fact, Independent charges OD Fees even when sufficient funds exist to cover transactions that are authorized into a positive balance. No express language in any document states that Independent may impose OD Fees on any APPSN Transactions.

44.    The Account Documents misconstrues Independent's true debit card processing and overdraft practices.

45.    First, and most fundamentally, Independent charges OD Fees on debit card transactions for which there are sufficient funds available to cover the transactions. That is despite contractual representations that Independent will only charge OD Fees on transactions with

insufficient available funds to cover a given transaction.

46.    Independent assesses OD Fees on APPSN Transactions that **_do_** have sufficient funds available to cover them throughout their lifecycle.

47.    Independent's practice of charging OD Fees even when sufficient available funds exist to cover a transaction violates a contractual promise not to do so. This discrepancy between Independent's actual practice and the contract causes accountholders like the Plaintiff to incur more OD Fees than they should.

48.    Next, sufficient funds for APPSN Transactions are actually debited from the account immediately, consistent with standard industry practice.

49.    Because these withdrawals take place upon initiation, they cannot be re-debited later. But that is what Independent does when it re-debits the account during a secret batching posting process.

50.    In reality, Independent's actual practice is to assay the same debit card transaction twice to determine if the transaction overdraws an account—both at the time a transaction is authorized and later at the time of settlement.

51.    At the time of settlement, however, an available balance *does not change at all* for these transactions previously authorized into good funds. As such, Independent cannot then charge an OD Fee on such transaction because the available balance has not been rendered insufficient due to the pseudo-event of settlement.

52.    Upon information and belief, something more is going on: at the moment a debit card transaction is getting ready to settle, Independent does something new and unexpected, during the middle of the night, during its nightly batch posting process. Specifically, Independent releases the hold placed on funds for the transaction for a split second, putting money back into the account, then re-debits the same transaction a second time.

53.    This secret step allows Independent to charge OD Fees on transactions that never

should have caused an overdraft—transactions that were authorized into sufficient funds, and for which Independent specifically set aside money to pay them.

54.      This discrepancy between Independent's actual practices and the contract causes accountholders to incur more OD Fees than they should.

55.      In sum, there is a huge gap between Independent's practices as described in the Account Documents and Independent's practices in reality.

### D.     Independent Abuses Contractual Discretion

56.      Independent's treatment of debit card transactions to charge OD Fees is more than a breach of the express terms of the numerous Account Documents. In addition, Independent exploits contractual discretion to the detriment of accountholders when it uses these policies.

57.      Moreover, Independent uses its contractual discretion to cause APPSN Transactions to incur OD Fees by knowingly authorizing later transactions that it allows to consume available funds previously sequestered for APPSN Transactions.

58.      Independent uses these contractual discretion points unfairly to extract OD Fees on transactions that no reasonable accountholder would believe could cause OD Fees.

### E.     Plaintiff's Debit Card Transactions

59.      As an examples, on August 14, 2020, Plaintiff was assessed OD Fees in the amount of $34.00 each for debit card transactions that settled on those days, despite the fact that positive funds were deducted immediately, prior to that day, for the transactions on which Plaintiff was assessed OD Fees.

## II.    <u>INDEPENDENT CHARGES TWO OR MORE FEES ON THE SAME ITEM</u>

60.      As alleged more fully herein, Independent's Account Documents allow it to take certain steps when its accountholders attempt a transaction but do not have sufficient funds to cover it. Specifically, Independent may (a) authorize the transaction and charge a *single* OD Fee; or (b)

reject the transaction and charge a *single* NSF Fee.

61.     In contrast to its Account Documents, however, Independent regularly assesses two or more NSF Fees on the *same* item or transaction.

62.     This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if a transaction is resubmitted for payment multiple times.

63.     Independent's Account Documents never disclose this practice. To the contrary, Independent's Account Documents indicate it will only charge a single NSF Fee on an item or per transaction.

### A.     Plaintiff's Experience

64.     In support of her claims, Plaintiff offers an example of NSF Fees that should not have been assessed against her checking account. As alleged below, Independent: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

65.     As examples, on November 16, 2020 and November 20, 2020, Plaintiff was charged multiple fees on the same payment when it was reprocessed more than once.

66.     Plaintiff understood the payments to be a single transaction as is laid out in Independent's Account Documents, capable at most of receiving a single NSF Fee (if Independent returned it) or a single OD Fee (if Independent paid it).

### B.     The Imposition of Multiple Fees on a Single Transaction Violates Independent's Express Promises and Representations

67.     The Account Documents provide the general terms of Plaintiff's relationship with Independent and therein Independent makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees and OD Fees may be assessed.

68.     The Account Documents contain explicit terms indicating that fees will only be

assessed once per transaction or single item—defined as a customer request for payment or transfer—when in fact Independent regularly charges two or more fees per transaction or single item even though a customer only requested the payment or transfer once.

69.     Independent's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

70.     Independent's Account Documents state that it will charge a single fee per item or transaction that is returned due to insufficient funds.

71.     The same "item" cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

72.     There is zero indication anywhere in the Account Documents that the same "item" or "transaction" is eligible to incur multiple NSF Fees.

73.     The same "item" on an account cannot conceivably become a new "item" each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to reprocess it.

74.     There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple fees.

75.     The Account Agreement states:

If we return the item without paying it, we may charge you a non-sufficient funds fee. If we do pay the item on your behalf, you will be responsible to pay the overdrawn balance and an overdraft fee…Our handling of these items may subject your account to a fee as disclosed in the Fee Schedule or other Disclosures.

76.     The Fee Schedule, Exhibit D, indicates that only a single NSF Fee or OD Fee would be charged per item:

Non-sufficient funds/overdraft^:
$5.00 courtesy threshold/fees capped at five per day
     Return item fee (per item) ........................................... $34.00
     Overdraft fee (per paid item) ..................................... $34.00
. . .

^ Fees apply to overdrafts created by check, in-person withdrawal, ATM withdrawal, or other electronic means, as applicable.

77.    Even if Independent reprocesses an instruction for payment, it is still the same item.

78.    Independent's reprocessing is simply another attempt to effectuate an accountholder's original order or instruction.

79.    The Account Documents described never discuss a circumstance where Independent may assess multiple NSF Fees for a single item that was returned for insufficient funds and later reprocessed one or more times and returned again.

80.    In sum, Independent promises that one NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Independent breached the contract when it charged more than one fee per item.

81.    Reasonable consumers understand any given authorization for payment to be one, singular "item" as that term is used in Independent's Account Documents.

82.    Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which Independent will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Independent disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor have Independent customers ever agree to such fees or practices.

83.    Customers reasonably understand, based on the language of the Account Documents and Independent's other documents, that the Bank's reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

84.    Banks and credit unions, like Independent, that employ this abusive practice know

how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Independent never did here.

85.     For example, First Hawaiian Bank engages in the same abusive practices as PCU, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://bit.ly/2KWMvTg (last accessed Jan. 28, 2021) (emphasis added).

86.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer Account Terms and Conditions*, Klein Bank 4 (Jan. 2013), https://bit.ly/2KVCkhI  (last accessed January 18, 2022) (emphasis added).

87.     Central Pacific Bank, a leading bank in Hawai'i, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous    Fee    Schedule*,    Central    Pacific    Bank    1    (Jan.    4.    2021),

https://www.cpb.bank/media/2776/fee-001.pdf (last accessed June 4, 2021).

88.    BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement,* BP Federal Credit Union, ¶ 14(a),  https://www.bpfcu.org/images/docs/membership-agreement.pdf    (last accessed June 4, 2021).

89.    Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (2018), https://bit.ly/2L0vx6A  (last accessed June 4, 2021).

90.    Andrews Federal Credit Union states, "

> You understand and agree that a merchant or other entity may make multiple attempts to resubmit a returned item for payment. Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to use for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

*Terms & Conditions*, Andrews Federal Credit Union 17 (Aug. 2020), ¶ 6, https://bit.ly/3iXEdHb (last accessed January 18, 2022).

91.    Consumers Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Member Services Guide*, Consumers Credit Union 5 (Apr. 2020), ¶ 11a, https://bit.ly/3iVM1ta  (last accessed January 18, 2022).

92.     Wright Patt Credit Union states:

Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item.

Therefore, multiple fees may be charged to you as a result of a returned item and represented regardless of the number of times an item is presented or represented to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information*, Wright Patt Credit Union 13 (July 2020), ¶ 6.1, (last accessed June 4, 2021).

93.     Railroad & Industrial Federal Credit Union states,

Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Important Account Information for Our Members*, Railroad & Industrial Federal Credit Union, p. 2, (Aug. 1, 2019), https://bit.ly/3t5ehhF (last accessed June 4, 2021).

94.     Partners 1st Federal Credit Union states.

Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union, p. 11 (Sept. 15, 2019), https://bit.ly/39pDZWb (last accessed March 2, 2021).

95.     Members First Credit Union states,

We reserve the right to charge an Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason.

**This means that a transaction may incur more than one Non- Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, https://bit.ly/39rRJ2Y (last accessed March 2, 2021).

96.     Community Bank, N.A. states,

We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank 5 (Nov. 12, 2019), https://bit.ly/3iY9dH2 (last accessed June 4, 2021).

97.     RBC Bank states,

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Accounts*, RBC Bank 13 (Sept. 17, 2014), https://bit.ly/3otUtko (last accessed June 4, 2021).

98.     Diamond Lakes Credit Union states,

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, Diamond Lakes Federal Credit Union, https://bit.ly/39o2P94 (last accessed June 4, 2021).

99.     Parkside Credit Union states,

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 (Jan. 30, 2020), https://bit.ly/3aaXfpG (last accessed January 18, 2022).

100.    Independent provides no such disclosure, and in so doing, deceives its accountholders.

### C.    The Imposition of Multiple Fees on a Single Transaction Breaches Independent's Duty of Good Faith and Fair Dealing

101.    Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Independent is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Independent has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor.

102.    Here—in the adhesion agreements Independent foisted on Plaintiff and its other customers—Independent has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Independent abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

103.    Independent abuses the power it has over customers and their credit union accounts and acts contrary to reasonable expectations under the Account Documents when it construes the word "item" to mean each iteration of the same payment. This is a breach of Independent's implied covenant to engage in fair dealing and to act in good faith.

104.    Further, Independent maintains complete discretion not to assess NSF Fees on

transactions at all. By exercising its discretion in its own favor—and to the prejudice of Plaintiff and other customers—by charging more than one NSF Fee on a single item, Independent breaches the reasonable expectation of Plaintiff and other customers and in doing so violates the implied covenant to act in good faith.

105.    It was bad faith and totally outside Plaintiff's reasonable expectations for Independent to use its discretion to assess two or more fees for a single attempted payment.

106.    When Independent charges multiple fees, Independent uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. Independent uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

## CLASS ACTION ALLEGATIONS

107.    Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. The Classes are defined as:

> All accountholders who, during the applicable statute of limitations, were charged OD Fees on APPSN Transactions on an Independent checking account (the "OD Fees Class").

> All accountholders who, during the applicable statute of limitations, were charged multiple fees on the same item on an Independent checking account (the "Multiple Fees Class").

108.    Plaintiff also brings these classes on behalf of a Michigan subclasses.

109.    Excluded from the Classes are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their

immediate families.

110.    Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

111.    The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Independent has acted on grounds generally applicable to the class.  Such common legal or factual questions include, but are not limited to:

a)    Whether Independent improperly charged OD Fees on APPSN Transactions;

b)    Whether Independent improperly charged multiple NSF Fees on the same item;

c)    Whether Independent improperly assessed two OON Fees for a single cash withdrawal;

d)    Whether the conduct enumerated above violates the contract;

e)    Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

f)    The appropriate measure of damages.

112.    The parties are numerous such that joinder is impracticable.  Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Independent's records.  Independent has the administrative capability through its computer systems and other records to identify all members of the Classes, and such specific information is not otherwise available to Plaintiff.

113.    It is impracticable to bring members of the Classes individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary

duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

114.    Plaintiff's claims are typical of the claims of the other members of the Classes in that they arise out of the same wrongful business practices by Independent, as described herein.

115.    Plaintiff is a more than adequate representative of the Classes in that Plaintiff are Independent checking accountholders and have suffered damages as a result of Independent's contract violations.  In addition:

    a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

    b)    There is no conflict of interest between Plaintiff and the unnamed members of the Class;

    c)    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d)    Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

116.    Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

117.    Independent has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

118.    All conditions precedent to bringing this action have been satisfied and/or waived.

### BREACH OF CONTRACT INCLUDING THE
### COVENANT OF GOOD FAITH AND FAIR DEALING
### (Individually and on Behalf of the Class)

119.    Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth

herein.

120.    Plaintiff, and all members of the proposed Classes contracted with Independent for checking account services, including debit card services.

121.    Independent breached promises made to Plaintiff and all members of the proposed class when as described herein, Independent charged OD Fees as a result of transactions that did not overdraw a checking account, on APPSN Transactions.

122.    Independent breached promises made to Plaintiff and all members of the proposed class when as described herein, Independent charged multiple NSF Fees on the same items.

123.    Independent breached promises made to Plaintiff and all members of the proposed class when as described herein, Independent charged two OON Fees for a cash withdrawal preceded by a balance inquiry.

124.    In addition, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

125.    Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

126.    The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

127.    Independent has breached the covenant of good faith and fair dealing and abused its discretion in its contract as described herein.  Specifically, Independent should not have used its discretion to charge OD Fees on APPSN Transactions or multiple NSF Fees on the same transaction. The Account Agreements do not have a contract term permitting OD Fees on such transactions, nor multiple NSF Fees on the same transaction, and the documents are otherwise ambiguous as to any right for Independent to charge OD Fees on APPSN Transactions or multiple NSF Fees on the same transaction.

128.    Independent breaches the covenant of good faith and fair dealing and abuses its discretion when it considered a balance inquiry to be a "transaction."

129.    Plaintiff and all members of the proposed Classes have performed all, or substantially all, of the obligations imposed on them under the contract.

130.    Plaintiff and all members of the proposed Classes have sustained damages as a result of Independent's breaches of the contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Classes, demand a jury trial on all claims so triable and judgment as follows:

A.    Certification for this matter to proceed as a class action on behalf of the Classes;

B.    Declaring Independent's OD Fee and multiple fee policies and practices to be in breach of its contract with accountholders;

C.    Restitution of all OD Fees and multiple fees paid to Independent by Plaintiff and the members of the Classes, as a result of the wrongs alleged herein in an amount to be determined at

trial;

       D.      Actual damages in an amount according to proof;

       E.      Pre-judgment and post-judgment interest at the maximum rate permitted by applicable law;

       F.      For costs and attorneys' fees under the common fund doctrine, and all other applicable law; and

       G.      Such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of herself and the Class, hereby demand a trial by jury on all claims so triable.

Dated:  October 23, 2023          Respectfully submitted,

                        */s/ Sophia Goren Gold*
                        Sophia Goren Gold
                        KALIELGOLD PLLC
                        950 Gilman Street, Suite 200
                        Berkeley, California 94710
                        Tel: (202) 350-4783
                        sgold@kalielgold.com

                        Jeffrey D. Kaliel
                        Amanda J. Rosenberg
                        KALIELGOLD PLLC
                        1100 15th Street NW, 4th Floor
                        Washington, D.C. 20005
                        Phone: (202) 350-4783
                        jkaliel@kalielpllc.com
                        arosenberg@kalielgold.com

                        JOHNSON FIRM
                        Christopher D. Jennings*
                        Tyler B. Ewigleben*
                        Attorneys for Plaintiff
                        610 President Clinton Avenue, Suite 300
                        Little Rock, Arkansas 72201
                        Telephone: (501) 372-1300
                        chris@yourattorney.com
                        tyler@yourattorney.com

\*To appear *Pro Hac Vice*

*Attorneys for Plaintiff and the Putative Class*